No. 27,128.

MINNIE RISHEL, *Appellee*, v. THE COUNTY OF McPHERSON et al.,
*Appellants*.

SYLLABUS BY THE COURT.

1. WILLS—*Testamentary Capacity—Undue Influence and Fraud—Sufficiency of Evidence*. The proceedings considered in an action by an heir of a decedent to recover from a devisee property devised by decedent's will, and *held*, findings of fact that the testator lacked testamentary capacity and the will was procured by undue influence and fraud, were unsupported by evidence.

2. SAME—*Action Contesting Probated Will — Limitations — Conclusiveness of Probate*. When the will was probated and when the action was commenced, the statute of wills provided an action to contest a will might be commenced within two years after probate. The action was not commenced within that period. *Held*, the order probating the will was conclusive with respect to validity of the will, as against charges of lack of testamentary capacity, undue influence, and fraud.

3. SAME—*Action Contesting Probated Will—Fraud—Limitations*. The general statute of limitations does not apply to an action to contest a will, and a contest on the ground of fraud must be commenced within the time limited by the statute of wills, without reference to time of discovery of fraud.

4. SAME—*Will Procured by Fraud—Nature of Heir's Remedy*. The action was an ordinary action by an heir to recover property, on the ground a will which cut her off, if valid, was procured by fraud. *Held*, her remedy was by action to contest the will, and not to establish a constructive trust.

5. SAME—*Grounds for Contesting Will—Incapacity of Taker—Void Charity*. The will devised property to a county as trustee for a public charity. *Held*, incapacity of the county to take and to act as trustee, and invalidity of the charity, were grounds for contesting the will, and could not be urged to defeat the will after lapse of the period allowed for contest.

6. COUNTIES—*Power to Hold Property in Trust for Charity*. A county may take and hold property as trustee for charitable uses, and may administer the trust.

7. WILLS—*Construction—Public Charity*. The will interpreted, and *held*, the beneficiaries of the trust are poor persons afflicted with tuberculosis, and the gift was a gift to public charity.

Appeal from McPherson district court; WILLIAM G. FAIRCHILD, judge. Opinion filed February 12, 1927. Reversed.

Charities, 11 C. J. pp. 315 n. 1, 337 n. 16; 5 R. C. L. 321. Wills, 40 Cyc. pp. 1023 n. 29, 1165 n. 87, 1240 n. 99, 1241 n. 22, 1257 n. 22, 1258 n. 25, 1372 n. 87, 1373 n. 94; 27 L. R. A. n. s. 2; L. R. A. 1915A, 444; 28 R. C. L. 86, 142.

*G. Nyquist,* county attorney, and *G. F. Grattan,* of McPherson, for the appellants.

*Alexander S. Hendry,* of McPherson, *W. V. Hoagland* and *Edward E. Carr,* both of North Platte, Neb., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover real and personal property from a devisee, by a person claiming under an oral contract with the devisor whose will had been duly probated. The petition was amended to base the claim on a written contract. There was no foundation for either claim. Plaintiff was an heir of the testator, and claimed the property on the ground the testator lacked mental capacity to make a will, and on the ground the will was induced by fraud and undue influence practiced on the testator. The court found the facts according to plaintiff's contention, but held action on those grounds was barred for failure to contest the will within the statutory period. The will gave the testator's property to McPherson county for charitable purposes. The court held the will was void for those purposes, and awarded the property to plaintiff. The county appeals, and plaintiff notes a cross appeal from the ruling based on her failure to contest the will.

On October 2, 1921, Oren G. Bigford died of pulmonary tuberculosis at the county hospital in McPherson county. He was about seventy-two years old. He left a will disposing of a farm of eighty acres in Marion county, two city lots in Carlton, Dickinson county, and some money and personal property. His heirs were the plaintiff, Minnie Rishel, and her brothers and sisters, who were children of the testator's deceased sister. Plaintiff lived in North Platte, Neb., was forty-one years old, and so far as the abstract discloses never saw the testator. She kept up a desultory correspondence with her uncle, and sent him small presents on his birthdays, at Christmas time, and on other infrequent occasions. Previous to November, 1920, the testator, who was a bachelor, lived alone on his farm. Advancing years, impaired eyesight, and the disease of which he died, made it difficult for him to care for himself. In October, 1920, the probate court of Marion county directed the county health officer to investigate his condition and make a report. At whose instigation this was done does not appear. On October 13, the county health officer reported that Mr. Bigford was not feeble-minded or mentally deficient, but was physically undernourished, weak, and infirm, was

suffering from hardening of the vitreous humor, which in time would cause total blindness, and for those reasons he was unable to take care of himself. Tuberculosis of long duration was not mentioned. On October 15 the county health officer filed a complaint for appointment of a guardian of Mr. Bigford's person and property. Suspecting that control of his property was the chief motive for the proceeding in his interest, Mr. Bigford went to McPherson county, and made his home with Burt Hodges from November 11, 1920, to June, 1921. While there he told Mr. Hodges he wanted his niece (the plaintiff) to have his property when he was through with it, and asked Mr. Hodges to use his influence to see that she got it. Mr. Hodges asked for some writing that he might show or that she might show for it. Mr. Bigford replied he would put nothing in writing, because that would put it in court, and he did not want his property to go through court in any way. His reason for preferring his niece was, she was a daughter of a favorite sister, and had written to him since she was old enough to do so.

In the course of some work preliminary to the holding of a tuberculosis clinic in McPherson, two nurses, one an itinerant nurse of the Kansas State Tuberculosis Association, and the other a Red Cross nurse, discovered Mr. Bigford's condition, and reported the facts to Dr. C. R. Lytle, who was county health officer of McPherson county. Doctor Lytle investigated the case, and in the course of his visits at the Hodges home, learned of the solicitude in Marion county for Mr. Bigford's welfare and property. According to Doctor Lytle, and there is no other evidence on the subject, Mr. Bigford expressed a desire for care which would not be mercenary. Doctor Lytle suggested that Mr. Bigford place his property at the disposal of the county officials, to be used for his comfort during the short time he had to live, and at his death to be used for erecting a sanitarium for unfortunates suffering from the disease with which he was afflicted. Doctor Lytle took Mr. Bigford to the county hospital, and later took the county attorney to see him. Mr. Bigford expressed a desire to dispose of his property as Doctor Lytle had suggested, and the county attorney made the following written recommendation to the board of county commissioners:

"I hereby submit for your consideration a proposition secured by C. R. Lytle from Oren G. Bigford, a citizen of McPherson county, with his will, leaving all of his property to the county of McPherson for the establishment of a tuberculosis sanitarium at McPherson. Mr. Bigford has been taken in charge

by Doctor Lytle as a tuberculosis patient, and it is his proposition that he shall be taken care of and maintained by this county during his lifetime, and at his death all his property go to the county for the purpose named. Mr. Bigford has no relatives to leave his property to, and is willing to have his property devoted to this purpose. Doctor Lytle believes that with this property and the funds to be derived from it that he can secure state aid for the location of a tuberculosis sanitarium at McPherson, and to assist in this I advise and recommend that the proposition be accepted."

The county commissioners were apathetic, and did not accept the proposal. They desired compensation for care of Mr. Bigford during his lifetime. Afterwards Mr. Bigford executed deeds of his real estate to McPherson county, and the will was redrafted. In its final form, the will read as follows:

"I, Oren G. Bigford, a resident of McPherson county, Kansas, being of sound mind and memory, do hereby make and publish this my last will and testament, that is to say: First, I desire that all my lawful debts of every kind and nature whatsoever shall be paid, also, the expenses of my last sickness, my funeral expenses and the costs of administration shall be first paid. In recognition of the consideration and attention given me by the American Red Cross at McPherson, because of my afflicted condition and sickness, they being the promoting and moving cause in making arrangements for my remaining days on earth more certain for better maintenance, for medical care and treatment such as is necessary for one in my condition, and further to provide a means whereby others afflicted as I am, but in a more unfortunate situation, may be afforded assistance and relief, I do hereby give, devise and bequeath to the county of McPherson, Kansas, all my real estate and personal property, the real estate being the west half of the southwest quarter of section 4, in township 17, range 1 east of the 6th P. M., Marion county, Kansas; also lots 19 and 21 in block 7 in the town of Carlton, Dickinson county, Kansas, to be conveyed to the county of McPherson, Kansas, in fee simple, reserving to myself during my lifetime all rents, profits, and the income from same, for the payment of my debts if any and for my personal expenses during my remaining days. In addition to the above, I have personal property, consisting of money on deposit in the banks and notes for money loaned, as follows: $147 in the Roxbury State bank; $80 in the Carlton State Bank, in Dickinson county, Kansas; one promissory note for $300 against John B. Mayes, and one promissory note for $300 against John B. Base, and one promissory note for $650 against Burt Hodges, all these notes drawing interest; I also have my last year's corn crop on hand, stored in the crib on the farm, estimated at 200 bushels, and I also have the corn, wheat and oats crop for this year, and cash rent of $50 due me for the use of the pasture. All as above set out, and any other property that may come into my possession by reason of the above, I do hereby give, devise, and bequeath, for the purpose of relief to those afflicted, more especially by tuberculosis, to the county of McPherson, state of Kansas, to be expended by said county for such charitable purpose. For the purpose of carrying out the terms and provisions of this my last will and testament,

I do hereby appoint Alex S. Hendry, of McPherson, Kansas, as administrator and executor of my estate, and that he shall not be required to give bond for the faithful performance of his duties as such administrator."

The witnesses to execution of the will were Doctor Lytle, Anna Main, one of the nurses mentioned above, and Lyda Swick, the matron of the hospital. The person named as executor in the will was the county attorney. The will and deeds were executed on July 2, 1921. The testator died on October 2, 1921. The deeds were filed for record on October 7. The will was presented for probate by the testamentary executor on October 11, and was probated on October 12. The order admitting the will to probate reads in part as follows:

"And after due proof and hearing had, and examination of the subscribing witnesses to said last will and testament having been duly taken and heard, according to the laws of the state of Kansas; and upon such proof, and it appearing to the satisfaction of the court that such last will and testament was duly attested and executed, and that the testator, at the time of executing the same, was of full age and of sound mind and memory, and not under any restraint, and was at the time of his death a resident of McPherson county, Kansas, and was in all respects competent to dispose of his estate: It is therefore by the probate court ordered and decreed that said last will and testament of Oren G. Bigford, late of McPherson county, Kansas, be, and the same is hereby established as a valid last will and testament, and that the same be, and is, duly admitted to probate, and is filed and recorded in the office of the probate court."

Letters testamentary were issued to the executor named in the will, and his notice in statutory form was published on October 14, 1921. Soon after the testator's death, Mrs. Hodges wrote a letter to plaintiff informing her of her uncle's death, and inclosed a newspaper clipping telling her he had made a will. No investigation of the circumstances under which the will was made was instituted by plaintiff until the summer of 1924, and the action was not commenced until September 22, 1924, almost three years after the will was probated.

At the time the will was probated and at the time the action was commenced, the statute read as follows:

"If no person interested, or claiming to be interested, shall appear within two years from the time of the making of any order by a probate court, probating . . . the will and contest the same, such order shall be forever binding, saving, however, to persons under legal disability, the period of two years after such disability is removed. . . .

"The mode of contesting a will after probate, . . . shall be by civil

action in the district court of the county in which the will was admitted to probate, . . . which action may be brought at any time within two years after the probate, . . . and not afterwards. . . .

"The order of the probate court shall be *prima facie* evidence on the trial of such action of the due attestation, execution and validity of the will." (R. S. 22-222, 22-223, 22-224.)

Notwithstanding the fact the court held determination of the issues of testamentary capacity, undue influence, and fraud, by the order probating the will, was conclusive upon plaintiff, the court found the testator lacked mental capacity to make a will, and found the will was obtained by undue influence and fraud practiced by the county health officer. These findings are contested.

When the county physician of Marion county made his investigation, he was obliged to report that Mr. Bigford was not feeble-minded or mentally deficient. Mr. Bigford had mental capacity to circumvent the attempt to put him under guardianship. Mr. and Mrs. Hodges, with whom Mr. Bigford lived for thirty-one weeks previous to his removal to the county hospital, were witnesses for plaintiff. She did not see fit to interrogate them concerning his mental capacity. Doctor Edgerton, who visited Mr. Bigford at the Hodges home four times in the month of May, 1921, was a witness for plaintiff. The doctor described Mr. Bigford's physical condition, but was not asked to describe his mental condition. Before the will was executed, two physicians, Doctor Dean and Doctor Heaston, examined Mr. Bigford, to ascertain his capacity to make a will. They found him very weak and emaciated as the result of tuberculosis in its last stages, but his mental condition "seemed to be all right." The enumeration of items of property contained in the will, showing full comprehension of the nature and extent of the testator's estate, was not impeached. At the trial, the following colloquy took place between court and counsel for plaintiff:

"By THE COURT: The only thing that is bothering me, you are undertaking to prove him insane, and then undertaking to prove a contract.

"By MR. HENDRY: No, sir. We are trying to show that he was ill. We do not claim that he was feeble-minded or insane. We don't pretend that this man was feeble-minded or insane.

"By THE COURT: I was allowing this stuff to run on the ground that that is what you were attempting to do.

"By MR. HENDRY: No, sir. We don't pretend or claim that; we don't allege he was insane or even feeble-minded, but we do say he was feeble physically, disabled and weak, and subject to undue influence of the fraud that was perpetrated upon him.

Rishel v. McPherson County.

"By the Court: All right. Go ahead.

"By Mr. Grattan: All of the evidence that has been offered preceding this question, the defendants move to strike out of the record, as incompetent, irrelevant, and immaterial, and not tending to support any of the issues in the case.

"By the Court: I will clean that up in the final wind-up."

This occurred while plaintiff was making her case in chief, and defendant was relieved from offering proof of testamentary capacity. The "cleaning up" in the final "wind-up" was this: On an issue, investigation of which was foreclosed and which was abandoned by plaintiff, the court found, against the evidence, in favor of plaintiff.

The court limited its finding that the will was procured by fraud to fraud practiced by Doctor Lytle. There is no evidence in the record that Mr. Bigford did not leave the Hodges home and go to the county hospital voluntarily, or that he was under any restraint while he lived at the hospital. There is no evidence whatever identifying or indicating or giving a clue to any false statement or pretense made to Mr. Bigford, or any trick or deception practiced upon him, to procure execution of the will. In the absence of evidence showing what false statements were made, what false pretenses were employed, or what trick or deception was used, there was no basis of fact for a finding of fraud. (*Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634.) The court merely assumed fraud from a letter written by Doctor Lytle to the state board of health the day after the will was executed, and from the testimony of one witness.

The witness referred to was Mr. W. J. Krehbiel, a newspaper publisher. In conversation with Mr. Krehbiel, Doctor Lytle said he had a chance to secure an estate for a tuberculosis hospital; Mr. Bigford was without heirs, was in a very bad condition, and would be glad to will his property for a purpose of that kind, if the county would take care of him; the county commissioners were not favorable, and it would be dangerous to publish the story before the county commissioners acted; the county commissioners had to be educated, and some one might block transfer of the property; there were persons in Marion county who were trying to get hold of the property, and Doctor Lytle desired that publication be withheld until the matter was disposed of, so as not to defeat success of the project. Doctor Lytle was enthusiastic about possibilities of the plan to establish a tuberculosis hospital. This evidence does not prove or tend to prove that any fraud was practiced on Mr. Bigford. Doctor Lytle's statement to Mr. Krehbiel of Mr. Bigford's desire

corresponded with the county attorney's statement to the board of county commissioners. The evident purpose of delaying public announcement was to prevent meddlesome interference with fulfillment of that desire.

The letter referred to was a communication from the county health officer to the state board of health, and the principal purpose in writing it was to suggest that others having an opportunity to do so might duplicate what had been done in Mr. Bigford's case. It can scarcely be said that a presumption arises from these facts that the letter was intended to propose to the state board of health a model method of accomplishing fraud. The letter follows:

"Gentlemen: The result of a little team work. During the preliminary work of our tuberculosis clinic here recently, carried on by Miss Bolt and Miss Main, a man, Oren G. Bigford, age 72, was found in a home twenty miles northeast of our city in the last stages of pulmonary tuberculosis and in a very unsanitary environment.

"The nurses reported the case to me, and I went to investigate. During this visit and subsequent ones, I learned the old gentleman had property, and had experienced trouble in safeguarding it from the efforts of supposed friends who were very solicitous for his welfare and his property. He expressed a desire to get into the hands of honest people who would look after him and not rob him of all he had, and suggested the county commissioners. I finally loaded him in my car and brought him to town, and suggested he place the property at the disposal of the county officials, to be used for his comfort during the short time he had to live, and at his death to be used in building a sanitarium for unfortunates suffering with the same disease.

"His brothers and sisters, a family of fifteen, and his remaining kin—nephew and nieces—little caring for his welfare, he assented to this. I took him to the county farm, and later took the county attorney, and he expressed a desire for the disposal of his property in this way. Yesterday he executed papers to this effect, with the landlady and Miss Main and myself as witnesses.

"His property consists of eighty acres of land and money and notes aggregating about $7,000, which will go to the above purpose at his death. But we are 'telling it not in Gath and publishing it not in the streets of Askalon' abroad, fearing a distant relative might step in and try to upset the deal. We think that we have everything air-tight.

"This is the outgrowth of our recent tuberculosis clinic conducted by Doctor Kenney, and a glorious success it was. Much credit is due to the efforts of Miss Main and Miss Bolt—two wonderfully efficient girls. Tell Miss Bolt we have finally put it across. She knows our aims and efforts.

"I relate this incident that some one else having an opportunity may possibly duplicate it. Our tuberculosis clinics are going to result in a demand for the county sanitarium. I am very happy if one is in sight for our county. We have plenty of space in our county hospital site, and this amount will give us a start toward the desired end."

Rishel v. McPherson County.

The letter lies before this court precisely as it did before the district court. The letter used colloquial and slang phrases—"team work," "upset the deal," "air-tight," and "put it across," which apply equally to honest and dishonest transactions, and uses one coarse expression, "loaded him in my car." But the letter discloses no conspiracy, known to Miss Bolt and participated in by Miss Main and the county attorney, to deceive or defraud Mr. Bigford, and the court acquitted everybody of fraud except Doctor Lytle. The tone of the letter is the result of Doctor Lytle's elation over prospect of realizing a cherished hope, a hope without trace of selfishness, the establishment of a sanitarium for the gaunt victims of tuberculosis; and considered as a whole, the letter contains nothing to impeach truthfulness of the full narrative which it contains of the precise circumstances which led to the making of the will. Fear that some distant relative might appear to frustrate the purpose expressed in the will was reasonably entertained. Old men's wills are favorite objects of attack, and the testators cannot defend them. In this instance, a flank attack came in due season, in the form of an unwarranted assertion of contract with the testator for all of his property after his death.

Doctor Lytle was privileged to solicit and influence Mr. Bigford to give his property to public charity. The influence which will defeat a will is undue influence. In the case of *Ginter v. Ginter*, 79 Kan. 721, 101 Pac. 634, it was laid down that power, motive and opportunity to exercise undue influence do not warrant the inference that undue influence was in fact exercised, and that suspicion, conjecture, possibility, or guess that undue influence or fraud induced a will, is not sufficient to sustain a finding to that effect. There must be proof of coercion compulsion, or constraint which destroyed the testator's free agency and obliged him to adopt the will of another instead of exercising his own. In this instance the record is barren of any proof that Mr. Bigford did not do just what he wanted to do.

In this state tuberculosis is declared by statute to be an infectious and communicable disease, dangerous to public health. (R. S. 65-105.) If a patient afflicted with infectious disease have no attending physician, it is the duty of the county health officer to perform the functions of attending physician (R. S. 65-112), and he may take charge of the case (R. S. 65-119). When the proposition

was first made to Mr. Bigford that he will his property for the benefit of tuberculosis sufferers, the relation of Doctor Lytle to him was official, and not confidential. Conceding that the relation may have become confidential before the will was made, and freely admitting that Doctor Lytle was active in procuring its execution, Doctor Lytle was not a beneficiary under the will. The evidence does not show who prepared the will. The internal evidence is that it was prepared by an attorney, from data furnished by the testator, and the court found it was prepared by the county attorney. The evidence is clear that the board of county commissioners were not concerned with preparation of the first will. One of the commissioners testified the will was presented to them by the county attorney, Doctor Lytle being present, and they rejected it. There is no evidence the board suggested the will be changed, or had anything to do with preparation of the will which was probated, and the statute relating to independent advice to a testator respecting contents of his will when prepared by a sole or principal beneficiary (R. S. 22-214) does not apply.

Aside from the conventional cant phrases appearing in the letter of Doctor Lytle to the state board of health, there is no evidence on which to base an inference that fraud or undue influence was practiced on the testator to procure execution of his will. This court is able to declare that those phrases do not imply impropriety in Doctor Lytle's conduct. The necessary conclusion is, the court's finding of fraud and undue influence was based on conjecture, and not on proof.

If it be conceded the will was procured by fraud, the district court properly ruled that failure to contest it in due time precluded plaintiff from raising the issue.

In plaintiff's brief it is said the action is not one to contest a will, but is one alleging the facts constituting the fraud and claiming the property. Two questions are pertinent: The petition is one alleging the facts constituting what fraud? The answer must be, fraud in procuring the will. The petition is one claiming the property on what ground? The answer must be, on the ground the will was invalid because procured by fraud. Both answers are found in the petition.

The petition alleged that plaintiff was Mr. Bigford's legal heir, and was entitled to his property at his death; that Mr. Bigford

contracted to give plaintiff all his land and personal property at his death; that he died seized of certain land and possessed of certain personal property; and that he was induced by fraud to make a will of his property, which was of no effect as against plaintiff's contract. The prayer was that plaintiff's contract be specifically enforced; that she be declared to be the owner of the real estate, and that she recover possession of it; that the will be canceled as a cloud on her title, and be set at naught; and that title be quieted in her. The petition further prayed for rents and profits of the land, for the money and personal effects belonging to the Bigford estate, and in case the land had been conveyed to innocent purchasers, that plaintiff recover its value with interest. The result was, the will was pleaded as a barrier erected by fraud to enjoyment of plaintiff's contract right to Mr. Bigford's estate, and the court was asked to remove the barrier by proper means. There was no pretense that the will might stand as a valid instrument, and that plaintiff might nevertheless recover. She was obliged to get rid of the will, and when she faced defeat on the contract and fraud theories, she sought to get rid of it on the ground it was void on its face as an ineffectual attempt to create a public charity. Therefore, it is a mere play on words for plaintiff to say she is not contesting the will.

The statute of wills was designed to prevent barratry and to give security to title derived by will. The statute provides for establishing a will by a proceeding *in rem* (*Pee v. Carlyle*, 120 Kan. 200, 202, 243 Pac. 296), which concludes the world with respect to validity of the will, unless some person claiming an interest appears within two years and contests it by civil action in the district court. The time limitation is now one year. (Laws 1925, ch. 160.) The nature of the privilege to contest a will was discussed at length in the cases of *Medill v. Snyder*, 71 Kan. 590, 81 Pac. 216, and *Ferrier v. Ferrier*, 108 Kan. 130, 193 Pac. 1071. In the Medill case the court said:

"The purpose of the law is to protect devisees, legatees, executors and trustees in their property rights, to foil efforts on the part of designing persons to foment annoying and embarrassing litigation, and generally to prevent the questioning of wills after time has removed witnesses and obscured the circumstances of their execution. . . .

"The jurisdiction of the district court under the wills act is an innovation of purely statutory origin. Likewise, the right of a party to invoke such jurisdiction is purely a statutory creation. One of the conditions attached to the exercise of the jurisdiction thus provided for, and the right to call it into

exercise, is that proceedings be instituted within two years. Time is of the essence of the power and the right, and lapse of time operates to extinguish both, rather than as a mere bar to a remedy. . . .

"The fact that the statute concerns itself primarily with the creation and regulation of jurisdiction and procedure, makes the probate of a will conclusive and forever binding, establishes the title to real and personal property under probated wills, and creates indisputable evidence of such title, all over and beyond the mere matter of remedy to one who may desire to assume the role of a contestant, so far distinguishes it from a mere statute of limitations that sections of the general statute of limitations cannot modify it." (pp. 592, 594, 599.)

In the Ferrier case, the court said:

"It was only by invoking that statute that an action to contest the will could be brought at all. The right to challenge the validity of the will by an independent action in the district court (as distinguished from an appeal, as to which see *Durant v. Durant*, 89 Kan. 347, 131 Pac. 613) existed solely by reason of the statute. The requirement that such an action, if maintained at all, must be begun within three years of the order of probate was not a mere statute of limitation applicable to a case of that kind; it was a condition upon which the right to bring such a proceeding was granted." (p. 132.)

The result is, whoever seeks to impair the effect of a will to vest title to the testator's property in his legatees or devisees, by denying its validity, finds both his right and his remedy in the statute, or not at all.

In the Medill case, the court held specifically that because the time limitation is a condition upon privilege to contest a will, the statute of limitations contained in the civil code had no application. No distinction is made with respect to grounds of contest, whether failure to observe essential formalities in execution of the will, nonexcution, lack of testamentary capacity, undue influence, or fraud. An action to contest a will on the ground of fraud must be commenced within two years, not from the discovery of fraud, but from the probate of the will. The result is, if the Bigford will had been procured by fraud, plaintiff was not permitted to impeach it on that ground.

Plaintiff cites the case of *Rhino v. Emery*, 72 Fed. 382, in which validity of certain probate proceedings not involving a will was attacked for fraud, and it was held a federal court of equity had jurisdiction to compel restoration of property, or its proceeds, acquired by the fraudulent proceedings. Jurisdiction of the federal court to afford relief was upheld on the authority of the decision

in the case of *Arrowsmith v. Gleason,* 129 U. S. 86. The ground of the decision in the Arrowsmith case was that the constitution of the United States confers privilege on a citizen of one state to sue a citizen of another state in courts of the United States; this privilege would be worth nothing if jurisdiction of federal courts was limited by state laws distributing power and prescribing modes of redress in state courts; therefore, a circuit court of the United States having chancery powers may, without controlling, supervising or annulling proceedings in a state court, give relief in cases of fraud, consistent with principles of equity.

In the case of *Rhino v. Emery* just referred to, a will formed part of the chain of title of the persons who held the fruits of the fraud. The testator had procured the property devised by the will, through fraud. One of the devisees was a participant in the fraud, and the other was not an innocent purchaser. Validity of the will was not questioned, and it was treated as a mere conduit through which property fraudulently acquired by the testator might be traced. The decision has no application to the present controversy.

There are numerous cases holding that under certain circumstances the beneficiary of a will may be charged as a trustee *ex maleficio* of property received by virtue of the will. The cases need not be reviewed here. It is sufficient to say that fraud and undue influence practiced on a testator are grounds for contesting his will; and to apply the constructive trust doctrine to the ordinary case of an heir suing to recover property on the ground a will which cuts him off if valid, was procured by fraud, would make waste paper of the statute of wills.

Plaintiff contended the will was invalid because McPherson county is not qualified to take or hold or act as trustee, and because other conditions essential to a valid trust for charitable uses were wanting. To state the contention is to state a ground for contest of the will. Probate establishes *prima facie* not merely due execution and attestation, but validity of a will. (R. S. 22-224.) The purpose of contest is to establish invalidity. The statute does not specify or limit grounds of contest. The cause of action may be anything which may be urged as destroying validity. Anyone having an interest may, within the statute period, propose grounds of contest. After that period has elapsed, he has no more privilege to contest a

will than he would have if he were originally a stranger having no interest.

Since the district court did not dispose of the case on the ground just stated, but held the will invalid, it is proper to say the district court erred. The constitution makes it the duty of the several counties to provide for those inhabitants who, by reason of infirmity or misfortune, may have claims upon the sympathy and aid of society. (Art. 7, § 4.) This provision of the constitution was interpreted in the case of *Beck v. Shawnee County*, 105 Kan. 325, 182 Pac. 397, involving constitutionality of a statute providing that certain counties may issue bonds to establish a county settlement of public welfare institutions, including a tuberculosis hospital, to be used by persons having some means, as well as by the indigent. In the opinion it was said the constitution gives utterance not merely to the universal voice of sympathy, but to a universally recognized duty to be discharged in the interest of the public welfare. The county is the basic unit for the cost of local and charitable relief. (*Treadwell v. Beebe*, 107 Kan. 31, 190 Pac. 768.) The care of those requiring aid and the dispensing of funds for their benefit is a part of the county's ordinary business, and there can be no doubt that a county may take and hold property as trustee for charitable uses, and administer the trust.

The testator suffered from tuberculosis while living, and died of that disease. He had some property, and could pay for his care and maintenance. His sympathy went out to those afflicted with the same disease but in a more unfortunate situation, and the beneficiaries of the trust created by his will are poor persons who are afflicted with tuberculosis. In *Treadwell v. Beebe*, supra, the court held a gift for the benefit of "deserving persons suffering from cancer in its early and probably curable stages," was a gift to public charity. The court is entirely satisfied with that decision, and it governs the present case. Without consuming space in refuting the argument of counsel for plaintiff, which fails to distinguish between private trusts and trusts for public charity, the court concludes that the will is valid.

The judgment of the district court is reversed, and the cause is remanded with direction to render judgment for defendants.