No. 37,412

In the Matter of the Last Will and Testament and Trust Estate of Sarah Denton, Deceased. (ORVILLE R. AIKMAN, LOUIS PEARL AIKMAN, OLAN E. AIKMAN, HAROLD F. AIKMAN, DAISY AIKMAN, MADGE E. AIKMAN, SYLVIA L. HOERETH, MINNIE ETTIE KIGER, ALVA E. SHEELY, GEORGE W. SHEELY, and LENORA SHEELY, *Appellants*, v. ROY F. BAKER and E. F. KEENE, Trustees under the will of Sarah Denton, deceased; THE ATTORNEY GENERAL OF THE STATE OF KANSAS, and JOHN B. LUND, *Appellees*).

(201 P. 2d 625)

Opinion filed January 22, 1949.

*N. J. Ward,* of Belleville, argued the cause, and was on the brief for the appellants.

*Charles L. Hunt,* of Concordia, argued the cause, and *Edward F. Arn,* attorney general, *Fred Swoyer,* of Belleville, and *Frank C. Baldwin,* of Concordia, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from a judgment of the trial court upholding certain trust provisions in the will of a decedent, the administration thereof by the testamentary trustees, and denying appellants' claim to the property in question.

Sarah Denton, a resident of Narka, Republic county, Kansas, died on October 3, 1934, leaving a last will and testament dated May 25, 1933. It was admitted to probate on October 9, 1934. The executor named therein qualified on the next day and on October 11, 1934, his notice of appointment was first published. An inventory and appraisement of decedent's property was made and filed, which valued her personal estate as of the date of death at $5,387.36. She also left real estate situated in Illinois valued at $1,000, and an 80-acre farm in Republic county appraised at $6,000.

After providing for the payment of debts and funeral expenses, the erection of suitable grave markers, and bequests of $100 and $50 to a sister and a friend respectively, the will authorized the executor to rent and manage all real estate and to sell the same without any order of court, with the further provision that the Republic county land be sold for not less than $150 per acre. Provision No. 7 of the will, and concerning which this lawsuit arose, provided that upon final settlement being made by the executor, all of the balance remaining, both personalty and real estate, be given, bequeathed and devised to three trustees named therein, in trust, for the uses and purposes named. The trustees were granted authority to handle the trust property, rent any real estate remaining, invest moneys, and otherwise manage the property. The provision relating to the sale of real estate by the executor was made applicable to the trustees in the event such real estate might not have been previously disposed of by the executor. Provision was made for the payment of $200 for perpetual upkeep of the cemetery lot of testatrix and prior deceased members of her family, and a further provision was made for the payment of $300 for the use and benefit of the Presbyterian Church of Narka, Kan. Provision No. 7 then provided:

"(*f*) As to all other funds and income therefrom in their hands, said Trustees shall use and employ the same for the following purposes: First—Use not to exceed the sum of Eight Thousand ($8,000.00) Dollars to purchase necessary ground and erect and equip thereon a public building in the city of Narka, Kansas, which shall be adapted for and suitable to use as a place for general community purposes, such as for the officials and business departments

of said city of Narka, Kansas, for church and school purposes of all kinds, for civic entertainments, and such other uses as said city of Narka, Kansas, through its governing officials shall determine from time to time, fitting and proper and within the law governing such places owned by a city of the class to which it now belongs or may hereafter become. Said building by proper marking, to be designated and known as 'Denton Memorial Building' for the purpose of perpetuating in memory the lives of my husband, John Denton and my son, Thomas Denton, whose lives were mainly lived in the vicinity of Narka, Kansas; and Second—Use the net balance remaining from the assets of my estate and the income therefrom coming to the hands of said Trustees, for the purpose of aiding residents of Narka, Kansas, and its general trade territory, who are in need and are worthy of aid in the judgment and opinion of said Trustees, and to as well aid worthy young men and young women residents of the same territory in obtaining an education in high school and/or college, to fit them for some proper calling, trade or profession and who would not otherwise be likely to have and obtain the advantages of such education. Provided, that my said Trustees shall not expend in any one year, for all of said purposes, an amount exceeding the income from said balance of assets plus one-tenth of the principal thereof. Provided further, that said Trustees shall use up and consume the whole of said principal and income therefrom within a period of not less than twenty years. Said fund to be known as 'Denton Trust Fund'.

"(g) It is made a condition to the provision relating to the memorial building contained in the preceding subdivision, that the city of Narka, Kansas, shall, through its properly constituted officials, enter into an agreement with said Trustees to accept said building upon its completion and thereafter maintain the same in good condition and supervise and control the use thereof for the purposes herein specified, and not otherwise, and so that the same may be available for use by all persons, organizations and bodies entitled to claim the use thereof under the terms of this will, free of cost to them, excepting only actual expense for fuel and light furnished by or through the agency of said city of Narka, Kansas.

"(h) In the event said city of Narka, Kansas, shall refuse to accept the gift of said memorial building under the conditions imposed upon it hereby, or in case it shall be determined by said Trustees that because of existing conditions or laws applicable thereto, it would be impracticable to provide such building and make effective the purposes intended, then and in that case, said building shall not be provided and in lieu thereof all of the funds which would have been set aside and used therefor shall be added to the funds referred to and to be handled under the provision designated 'second' under subdivision ('f') above set forth, and the same be applied and used for the same purposes as thereby provided, except that the amount of principal which may be paid out for said purposes in any one year shall be limited to one-fifteenth part thereof in place of one-tenth thereof."

On April 3, 1940, the executor filed his final account and petition for discharge in which he alleged that he had completed the administration; that the provisions of the will devolving upon him had

been carried out; that the Illinois real estate had been sold; that he had not sold the Republic county farm because he had been unable to obtain an offer therefor of as much as $150 per acre; and that he still had in his custody as executor this real estate, certain moneys and certain United States treasury bonds. The petition for final settlement and discharge was set for hearing and notice thereof given pursuant to the statute. On April 27, 1940, his final account was approved, order of final settlement made and he was ordered and directed to deliver over all of the remaining assets of the estate to the testamentary trustees named in the will. The three trustees qualified and on June 5, 1940, letters of appointment were issued to them by the probate court. Shortly thereafter the trustees received the assets from the executor and he was thereupon discharged. The trustees entered upon their duties and made reports to the probate court in June, 1941, June, 1942, January, 1943, January, 1944, and January, 1945, showing receipts, disbursements, and assets on hand.

On September 14, 1945, the trustees brought an action in the district court of Republic county, in which they recited the death of Sarah Denton, the admission of her will to probate, and the administration of her estate by the executor and later by the trustees. The petition made reference to the farm land in Republic county which, by the will, was not to be sold for less than $150 per acre, and alleged that such limitation in the will had precluded them from making any sale and that such price was far in excess of its reasonable market value and far more than such value thereof at the date of death of Sarah Denton or at any time intervening. The petition further alleged that in the judgment of the trustees the value of this real estate was as high as it would be within any reasonable length of time, and prayed an order of the court permitting them to sell the same at the reasonable market value thereof in order that they be able to carry into effect the trust provisions and intentions expressed in the will. A hearing was had on this petition and on October 11, 1945, the district court authorized and directed the trustees to sell and convey the farm for a sum of not less than $6,000. A number of bids were received, the highest being $6,250, and the trustees sold the farm to John B. Lund for that amount. A written report of the sale was made to the court and on March 1, 1946, the district court entered its order confirming the sale and ordered the trustees to execute a deed to the purchaser. That was done and the purchase price paid.

On February 15, 1946, appellants filed their petition in the probate court setting forth that they were the sole and only heirs at law of the deceased, being her nephews and nieces; that the trust matters purported to be set up in the will should be terminated, the trustees required to make their final accounting and that all property remaining should be distributed to such petitioners in accordance with their respective interests therein for the following reasons:

That the farm described in the will cannot legally be sold for less than $150 per acre; that there has been no time since the death of Sarah Denton that such sum could be received therefor nor is there any reasonable likelihood that such price could ever be received for the same; that the purported sale by the trustees to John B. Lund was made without authority, should not be approved and that such purported sale was made for less than the actual value of the land; that the "Denton Memorial Building" has not been built and never will be built for the reason that there are insufficient funds therefor; that there is not and never has been since the death of the testatrix any public need or desire for said building nor will there be in the future; that the city of Narka has failed and refused to accept a gift of said memorial building upon the conditions imposed for the acceptance thereof and that should the city of Narka accept such building upon the terms and conditions set forth in the will, still the same is not and will not be usable for general community purposes as contemplated and provided in the will; that the acts and conduct of the executor and trustees under the will and of the officers and representatives of the city of Narka have been such as to show a repudiation of the benefits thereof and that because thereof the terms of said will cannot now be administered; that there has been no use of any of the money or the property belonging to such estate for any of the trust purposes mentioned nor will there be in the future and that there is not now and will not be at any future time a reasonable need for any of the trust purposes mentioned in the will; that there are not now nor will there be in the future any residents of Narka or within the vicinity thereof and its general trade territory who are or will be in need of the normal necessities of life or who will be in need of the benefits of said will for educational purposes as to justify the condition of such trust; that it is impossible for the trustees to use and consume the money and property involved in such trust within the time provided in the will and that there is no further use in keeping the trust alive; that the city

of Narka has not taken nor will it take the necessary action to accept such trust even if it has the power so to do and that said city does not have the corporate power to accept and administer such trust; and that the purported trusts set up in said will do not grant public charities and are void under-the rule against perpetuities.

The prayer of the petition was that the trust be terminated, the trustees required to make their final accounting and that all property remaining in their hands, after the payment of costs and expenses, be paid over to said petitioners according to their respective interests therein.

This petition was set for hearing by the probate court and shortly thereafter the attorney general of the state intervened on account of the public charity provisions of the will, and on April 3, 1946, an order was made by the probate court transferring the petition and trial thereon to the district court of Republic county.

On October 9, 1946, the trustees answered and on the same date John B. Lund, the purchaser of the real estate in question, was made a party defendant and filed his answer and cross-petition, the prayer of the latter asking that title to the real estate be quieted in him as against the petitioners.

At the trial considerable evidence was introduced by the petitioners and the respondent trustees. The court made extensive and comprehensive findings of fact, all of which were in favor of the trustees, and rendered conclusions of law that—

1. The petition to terminate the trust upon which the proceeding was based was a contest of the will.

2. The trusts created by the will were valid and should be executed and enforced.

3. None of the trusts set up in the will had been repudiated by either the trustees or the beneficiaries.

4. The sale of the farm for less than $150 per acre was lawful and valid and the petitioners in this proceeding could not collaterally challenge the validity of the district court's orders authorizing or confirming such sale.

5. The petitioners, heirs at law of Sarah Denton, have and recover nothing in this proceeding; that the title to the real estate in question be quieted and confirmed in John B. Lund as against all of the other parties to said suit, and that respondents have judgment against petitioners for costs.

Petitioners' motion for a new trial, motion for judgment, request for additional findings and to set aside findings, and supplemental motion to strike findings were overruled and they appealed, setting out eleven specifications of error.

Because of our view as to the proper disposition of this case, no useful purpose would be served by reciting in detail the evidence introduced in the lower court and the findings of fact based on such evidence. It is sufficient to say that we have examined this evidence, together with all of the authorities cited by appellants, and we are convinced that the trial court's findings of fact were based upon substantial competent evidence and that its rulings on the various legal questions were correct.

This brings us to what we consider to be the real controlling factor in this case. The will was admitted to probate on October 9, 1934. No appeal from that order was ever taken by anyone. The statute in force at that time (R. S. 1933 Supp. 22-223) provides that the mode of contesting a will after probate shall be by civil action in the district court of the county in which the will was admitted to probate and that such action must be brought within one year after the order of probate and not afterwards.

No action of any kind was taken by petitioners until they filed their petition on February 15, 1946—some eleven years and four months later. This is not an action to construe a will or a trust. It is an action denominated "Petition Terminating Trust," but in reality is an action to strike down and destroy the testamentary trust created by the testatrix for benevolent and charitable purposes to the end that petitioners, as heirs at law, will receive the property remaining in the hands of the trustees. The will stands as an obstacle to their petition and it must be set aside before they can receive anything. Courts should look through and beyond the camouflage of wordage in order to ascertain the actual result which is sought. It is a mere play on words to say that petitioners are not contesting this will even under their theory that it is void on its face as an ineffectual attempt to create a public charity. There is no pretense that its provisions might stand and be carried out and the petitioners still recover. Any cause of action a pleader can set down on paper, which, if established, would necessarily render a will nugatory, is a contest of the will and must be brought within the time allowed by the statute in force. This court has held in an unbroken line of decisions that any action, the plain and essential purpose of which is to get rid of a will—to effect a result contrary to the obvious intent of a testator—is an action to contest the will and must be brought as such under the contest statute or

not at all. *(Rishel v. McPherson County,* 122 Kan. 741, 253 Pac. 586; *Mayer v. Taylor,* 142 Kan. 54, 45 P. 2d 858; *Kunze v. Kunze,* 145 Kan. 72, 64 P. 2d 558; *Axe v. Wilson,* 150 Kan. 795, 96 P. 2d 880; *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242.)

The judgment of the trial court is affirmed.