No. 31,526

WILLIAM B. ROSS, *Appellant*, v. MARY A. ROSS, ARMINTA KAUBLE et al., *Appellees.*

(31 P. 2d 718.)

Opinion filed April 7, 1934.

*W. H. Sprecher,* of Arcadia, for the appellant.

*Guy W. Von Schriltz, A. H. Carl, Ben Humphreys,* all of Pittsburg, and *G. W. Corporan,* of Arcadia, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for the recovery of real estate and to recover money.

The petition alleged that the father of plaintiff was induced by the Home State Bank and J. T. Fowler to make a will for the benefit of the bank on or about the 31st day of August, 1927; that this will provided for a life estate in all the property in question in the wife of testator and mother of plaintiff, Mary A. Ross, and that at her death thirty acres of the farm owned by testator should go to plaintiff in fee, and sixty acres should go to Arminta Kauble, the daughter of testator and sister of plaintiff, in fee, subject to a mortgage of $1,000. The petition further alleged that after the execution of the will Ephraim Ross and Mary Ross became dissatisfied with the will and made an agreement with plaintiff about September 21, 1927, to the effect that if he would move onto the thirty acres of

ground in question and care for his father and mother as long as either of them should live, then after the death of the last survivor the thirty acres should be the property of plaintiff in fee simple clear of any encumbrance; and that it was further agreed that plaintiff should have during his lifetime, free of rent, four acres for a garden patch; and that plaintiff was to pay to his father and mother one-fourth of the crop raised on the balance of the thirty acres and that plaintiff was to pay the taxes on the entire thirty acres. The petition then alleged that plaintiff moved onto the thirty acres with his family and carried out the terms of the agreement. The petition then alleged that sometime in November, 1927, defendant, Arminta Kauble, rented the sixty acres of land, the property of her father, and moved a house on the land in question for which she was to pay $250, and that she agreed to pay $15 rent, one-fourth of the crops raised and all the taxes on the land, and that she had failed to do so. The plaintiff then alleged that his father, Ephraim Ross, died May 10, 1929, and that defendant, Mary A. Ross, the mother of plaintiff, continued to make her home with plaintiff, but that she, in order to equalize the differences between plaintiff and his sister, caused by the sister not paying for the house she had moved onto the sixty acres and not paying the rent, agreed that she would allow plaintiff $30 a year on his thirty acres and would cancel the grain rent which he had agreed to pay. The petition then alleged that defendant, Arminta Kauble, about January 16, 1930, induced and enticed defendant, Mary Ross, to leave the house of plaintiff and go to live at the house of defendant, Arminta Kauble, and that plaintiff was without fault and in no way the cause of his mother leaving his home. The petition then alleged in detail a conspiracy between Arminta Kauble, the Home State Bank of Arcadia, J. T. Fowler, Joseph F. Davenport, Florence Gaffney, C. C. Warlop, Archie Mossom and the Crawford Retailers Association, to deprive him of his property and ruin his reputation. The petition told the story of defendants attempting to drive plaintiff from his home by using vile language toward him and by various similar activities, which finally culminated in the service of what plaintiff describes as "pretended notice" to quit the premises occupied by plaintiff and the service of a "pretended summons" issued by defendant, Joseph F. Davenport, a justice of the peace. The petition then recites how, by the connivance of various justices of the peace and other de-

fendants named, a judgment was finally issued against him evicting him from the real estate in question; and that plaintiff attempted to appeal this decision to the district court and had a good and sufficient appeal bond signed by defendant, Florence Gaffney; and that C. C. Warlop, in furtherance of the conspiracy, induced Florence Gaffney to withdraw from the appeal bond; and that plaintiff then filed a poverty affidavit in lieu of an appeal bond, but that defendant, Warlop, conspired with G. W. Corporan and T. J. Karr, who plaintiff alleges are the agents of the Crawford County Retailers Association, to ruin plaintiff and caused an execution to issue against plaintiff, and that finally on April 4, 1932, defendants, C. C. Warlop and Archie Mossom, did put plaintiff and his family off the real estate in question and threw his household goods into the street. The petition then alleges damages in detail in the amount of $6,605.65 and on account of the conspiracy alleged $6,-605.65 punitive damages and that he was wrongfully deprived of the possession of the real estate in question. The petition prayed damages in the amount of $13,211.30 and that plaintiff be restored to possession of the real estate.

To this petition the Home State Bank, J. T. Fowler and the Crawford County Retailers Association answered admitting that Ephraim Ross, on or about August 31, 1917, executed a will, and admitting that the will was written by defendant Fowler, but denying that Ross was persuaded by Fowler to make the will. The answer alleged that by the terms of the will all of the property of Ephraim Ross went to Mary Ross for life, with specific power in Mary Ross that she might use, mortgage, sell or convey any part of this property and at the time of her death the remainder, if there was any, to go to plaintiff and defendant, Arminta Kauble. The answer further alleged that the will of Ephraim Ross was admitted to probate on August 27, 1929, and that plaintiff had not since the will was probated and prior to the filing of the petition in this case contested this will.

C. C. Warlop, Archie Mossom, Mary A. Ross, Arminta Kauble, Florence Gaffney and Joseph Davenport filed general denials.

The case had been set for trial at the special instance of the plaintiff for April 17, 1933. Plaintiff claims that his counsel received a copy of an amended answer of Mary A. Ross and Arminta Kauble on April 13, 1933, through the mail, and that he presumed on that account the case would not be at issue on April 19 and hence

would be continued. Accordingly when the case came on to be heard on the 17th and plaintiff discovered that the amended answer had not been filed, he asked for a continuance on the ground that the copy of the answer being sent him had caused him not to prepare his case and he was not ready. The motion for a continuance as requested was denied, but the case was continued for twenty-four hours to give plaintiff time to prepare.

When the case came on to be heard on April 18 plaintiff dismissed his action without prejudice as to any future action against all the defendants except Mary Ross and Arminta Kauble. The result of this was to take the conspiracy feature out of the case and leave as the only issue to be tried the question of whether plaintiff was entitled to the possession of the thirty acres of real estate under the contract which he claimed to have with his father and mother, or whether his mother was entitled to a life estate in it with the power to dispose of it during her lifetime if she saw fit.

The action was one in which the parties would not be entitled to a jury as a matter of right. A jury was impaneled, however. Its function was to act in an advisory capacity to the trial court.

The evidence on the part of plaintiff was about as follows: Plaintiff asked for a continuance on account of the illness of his wife. This continuance was denied, and the affidavit of what she would testify to was introduced as her evidence. With reference to the contract, the affidavit was as follows:

"That the said defendant, Mary A. Ross and Ephraim Ross, her deceased husband, came to the home of affiant and his wife, on several different occasions, and that said Ephraim Ross stated to affiant and to the witness, Mary G. Ross, that he, the said Ephraim Ross, desired plaintiff and his wife to move to the home of the said Ephraim Ross and to look after and take care of said Ephraim Ross so long as he should live, and also to look after and take care of Mary A. Ross; that in said several conversations the said Ephraim Ross said that if affiant and his wife would do this that the farm consisting of thirty acres, and described in plaintiff's petition should become the absolute property of the said plaintiff upon the death of said Ephraim Ross; that in these several conversations it was agreed between the said Ephraim Ross and the plaintiff that if the said plaintiff and his wife would move to the place, as aforesaid, he should have free of rent a four-acre truck patch, should pay the taxes on the place and give to the said Ephraim Ross, while he lived, one-fourth of the crops raised on the remainder of said thirty acres."

It will be noted that the contract testified to by Mrs. Ross was somewhat more favorable to plaintiff than was pleaded by plaintiff in that the petition alleged that plaintiff was to take care of Ephraim

Ross and Mary C. Ross as long as either one of them should live and then William Ross was to get the thirty acres in fee simple, while the affidavit of plaintiff's wife was that the plaintiff was to get the thirty acres on the death of Ephraim.

Plaintiff testified as follows:

"Q. Well, what were you to get during the old gentleman's lifetime? A. I was to get the use of four acres of ground, have a garden patch, and tend to whatever ground I could, and get a fourth of the crop, and I was to pay the taxes.

"Q. Did you do that? A. I paid most of the taxes.

"Q. Was there any reason why you didn't pay them? A. Yes, sir.

"Q. Tell the jury what it was. A. Because our father had sold Arminta Kauble a house and she agreed to pay $250. She refused to do so, refused him to do so, after the house was moved on her sixty acres. And he said if she wouldn't be fair and pay for the house he would equalize it among his children and give $2.50 and that would be $30 a year.

"Q. That was the least he allowed you on the taxes?

"MR. VON SCHRILTZ: Objected to as assuming.

"Q. Go ahead and tell the rest of it.

"(Witness does not answer.)"

The witness further testified that he carried out the agreement except that he did not pay all the taxes; his mother stayed about eighteen months; she left because she had to, to get anything from the sixty acres where the sister lived; she went to live with the sister; the mother was welcome to come back any time; after the father's death he considered that his place; the year he was put off the place he intended to make $1,410 farming the thirty acres; the first year he lived there he paid his parents a fourth of what he raised, except that from his four acres; on the second day of March the mother told him she wanted him to stay right there and do just like she had told him before.

On cross-examination the witness testified that he paid a fourth of his corn for rent the first year. It seemed like it was eighteen or twenty bushels. No testimony as to what he paid the second year. The third year he paid twenty bushels of corn. The fourth year he paid nothing.

At the close of the plaintiff's case the court sustained a demurrer to the evidence. This is an equity action to enforce an oral contract for the conveyance of real estate. Of this class of cases the court said in *Laupheimer v. Buck*, 135 Kan. 631, 11 P. 2d 721:

"This case is of that class in which trial courts are called upon to examine with care the evidence offered to sustain the contract relied upon. This court,

and others, have frequently so ruled. (*Cathcart v. Myers,* 97 Kan. 727, 732, 156 Pac. 751; *James v. Lane,* 103 Kan. 540, 549, 175 Pac. 387.) Where the evidence to establish the parol contract relied upon consists of the testimony of plaintiff and his near relatives and immediate friends there is all the more reason for careful scrutiny. Some courts have ruled that the testimony must come from disinterested witnesses. (*Andrews v. Aikens,* 44 Ida. 797, 260 Pac. 423.)" (p. 637.)

In *Woltz v. First Trust Company,* 135 Kan. 253, 9 P. 2d 665, this court, in considering a similar case, said:

"In order to sustain his right to recover plaintiff must plead and show that there was a contract and compliance therewith on his part under which, in equity and good conscience, he should possess and enjoy the property sought, as against those who would otherwise be entitled to it. 'The contract is the foundation of plaintiff's right to recover.' (*Dreher v. Brumgardt,* 113 Kan. 321, 214 Pac. 419.) It is essential that the contract be clearly established, that there has been performance on the part of the promisee, and that the claim is equitable." (p. 259.)

The consideration of such a question rests in sound judicial discretion. The jury was acting only in an advisory capacity. The court was not obliged to believe the testimony of any witness simply because it was uncontradicted. (See *Weber Implement & A. Co. v. Dubach,* 132 Kan. 309, 295 Pac. 979; also, *Sharp v. Losee,* 109 Kan. 211, 199 Pac. 94; and *Peoples National Bank v. Diven,* 135 Kan. 400, 110 P. 2d 883.)

Since the jury was acting in an advisory capacity only, the duty of weighing the evidence devolved upon the trial court. From the conclusion reached the trial court evidently did not believe the testimony of plaintiff and his wife, or did not believe that the contract testified to was one which equity should enforce, or did not think that even if the evidence of plaintiff and wife were true as to what was done by them that such constituted sufficient performance of the contract as to warrant a decree ordering performance.

In the event any of these conclusions were reached the court was not bound to wait until the defense had put on its evidence but could conclude the case at the end of the evidence of plaintiff.

As we view the record we have concluded that the court would have been justified in reaching any or all of the above conclusions.

It will be noted that the contract pleaded was that plaintiff was to move onto the place and take care of his mother and father as long as either one should live, and then plaintiff was to get the place. The affidavit of the wife was that plaintiff was to get the place as soon as the father died. The testimony of plaintiff was to the same

effect. This was a marked discrepancy between the pleading and the proof. If the contract was one where the mother lost all title in the land when her husband died, then it should be scrutinized even more carefully than the contract pleaded. If the contract pleaded was the one, then plaintiff was not entitled to the land until the mother died and the suit is prematurely brought. There is the background that the father made his will, with which plaintiff says he became dissatisfied about a month before the making of the contract pleaded. Mayhap the trial court did not believe the witnesses in their story that any contract was made at all. At any rate there was a lack of that clear and satisfactory proof which equity and good conscience demand that such a case should have.

Then the proof that the contract was performed is highly unsatisfactory. The nonpayment of taxes is excusable under the testimony of the parties, although the court may not have believed the testimony as to the excuse. The plaintiff himself testified that he did not pay the rent for the fourth year that he lived on the place. He did not testify at all as to how much he paid the second year and said his father demanded twenty bushels of corn the third year when his father died in May of that year. Even had the court believed the testimony of plaintiff, performance of a contract to convey real estate could not have been ordered based upon such evidence as to performance.

The plaintiff makes the further point that the trial court was wrong in giving him only twenty-four hours continuance in order to prepare the conspiracy part of his case for trial. The record discloses that the case was set for trial on the 13th day of April, 1933, at the request of plaintiff. It appears he had ample notice that defendants expected to go to trial on that day. Trial courts have a wide discretion in the matter of continuances. Under all the circumstances we cannot say the action of the court in this case was an abuse of discretion. There are other errors urged by plaintiff, but in view of the conclusion that we have reached as to the showing made by plaintiff it is not deemed necessary to discuss them.

The judgment of the trial court is affirmed.

SMITH, J. (concurring specially): I concur in the conclusion that the case should be affirmed, and in all that is said in the majority opinion, but think there is a further ground upon which the judgment should be affirmed. I am of the opinion that the suit was one to contest a will, and that it was barred by R. S. 1933 Supp. 22-223.

The will was introduced in evidence. The clause which is of interest to us is as follows:

"Third, I give, devise and bequeath to my beloved wife, Mary A. Ross, all of my property both real and personal, which I may die in possession of, for her use and benefit with full power to sell and dispose of any or all of it as she may see fit to do, and that her action shall be absolute. Should my wife die in possession of my property that I now have it is my will and desire that it be divided as follows,

"To my son William B. Ross, the east three-fourths (¾) of the southeast (¼) of the southeast quarter (¼) in section 26, township 27, range 25, Crawford county, Kansas.

"To my daughter Arminta Kauble, the southwest quarter of the southwest quarter, and the west half of the southeast quarter of the southwest quarter all in section 25, township 27, range 25, Crawford county, Kansas."

The theory of plaintiff is that the action is one to enforce a contract to convey real estate in return for services rendered where the cantract has been fully performed on the part of the party seeking the conveyance. The defendant argues that the action is one to set aside a will, and that the action is barred by R. S. 1933 Supp. 22-223. That section is as follows:

"The mode of contesting a will after probate, or an order of the court refusing to probate the will shall be by civil action in the district court of the county in which the will was admitted to probate or the order of the court refusing to probate was made, which action may be brought at any time within one year after the probate, or the order of the court refusing to probate the will, and not afterwards."

We have seen that the will of Ephraim Ross was probated August 27, 1929. This action was filed May 2, 1932. More than two years had elapsed after the probating of the will before this suit was filed. We have to consider then whether the action brought was covered by the terms of R. S. 1933 Supp. 22-223.

Interpreting the will of Ephraim Ross, it is plain that Mary Ross took a life interest in the real estate in question with an added power to sell and convey, and that the children took vested remainders in the tracts devised to them, which interests are subject to be divested upon execution of the power by their mother. (See *Postlethwaite v. Edson*, 98 Kan. 444, 155 Pac. 822.) That is, if the will is given effect defendant, Mary A. Ross, had the right to possession of the real estate in question during her lifetime, and she had the further right to dispose of it, which right continued as long as she lived. If plaintiff should prevail in this action, he would have the right to immediate possession of the thirty acres, subject only to

the duty to make a home for his mother as long as she should live, and she would have no right whatever to dispose of it.

Under such circumstances I hold that the action is one to contest a will. The plaintiff argues that the will was only mentioned in his petition for the purpose of showing some of the acts of the conspiracy alleged, and that he was relying wholly on the contract. The trouble with that argument is plaintiff makes the following statement in his argument: "It is appellant's contention that his father in his lifetime abrogated the will in making the agreement with appellant." An attempt to substantiate such an argument is certainly an attempt to contest a will, no matter by what name it is called. This question arises many times where a will has a provision that if a devisee contests a will he shall lose what has been devised to him. Such a case is *Moran v. Moran*, 144 Ia. 451, 123 N. W. 202. It was said:

"An attempt to assert title to property embraced in testator's will, under an independent title, is within a provision forfeiting the share of one who contests the will, if its success would effectually upset and destroy the whole plan which testator had formed for the disposition of his estate." (30 L. R. A., n. s., 898, headnote 4.)

This action was brought by the children of testator by his first wife and charged that a farm which testator had left his second wife was in reality the property of his first wife, and on that account the testator had no right to devise it to anybody. The theory of the action was that the title to the farm was in plaintiffs by inheritance from their mother.

The court held against them in that action and in a subsequent action held the former suit was in reality an action to contest the will, and under a clause in the will which provided that any of the legatees named in the will who should contest it should thereby forfeit their right to any portion of the estate, the plaintiffs in the original suit had thereby forfeited their rights under the will. The point upon which this and similar cases turn is whether the result sought in the action would be to upset the plan of the testator for disposing of the estate.

In the case at bar it was evidently the intention of the testator in making his will to leave his real estate in such shape that his wife could do with it whatever she deemed to her own best interests. The plaintiff and his sister were to have, at her death, whatever she had not seen fit to use during her lifetime. Manifestly the pres-

ent action on the part of plaintiff strikes through that plan. We have seen that if it should succeed the mother would only be entitled to a home on the real estate as long as she lived there with plaintiff, and would not be entitled to dispose of it under any circumstances.