No. 35,611

JAMES YEAGER et al., *Appellees*, v. MARY YEAGER et al., *Appellants.*

(129 P. 2d 242)

Opinion filed October 3, 1942.

*Chas. C. Calkin,* of Kingman, argued the cause for the appellants.

*H. E. Walter* and *T. M. Flick,* both of Kingman, were on the briefs for the appellees.

The opinion of the court was delivered by

HOCH, J.: In an action brought in district court, plaintiffs sought to impress a trust upon certain real estate in contravention of a devise made in a will, the cause of action being based upon an alleged oral agreement on the part of the testator. The defendants demurred on the grounds that the district court was without jurisdiction, that the petition did not state a cause of action and that another action was pending between the same parties and involving the same cause of action. The demurrer was overruled and defendants appeal.

Brief statement of the facts will suffice. Samuel Yeager, a resident of Kingman county, died testate on July 13, 1941. By the terms of his will executed June 23, 1941, he devised the real estate

in question to his wife. In an original action in district court, the plaintiffs, children of the testator by a former marriage, alleged an oral agreement, made some years prior to the execution of the will, between Samuel Yeager and his sister, who, it was alleged, was, at the time of the agreement, the owner of the land, under which it was agreed that the land would be devised to plaintiffs. It is not necessary to recite at length the averments by which the plaintiffs sought to establish the alleged oral contract, to impress a trust upon the land in contravention of the express terms of the will, and to require the defendant to reconvey the land to them. Admittedly, what they sought to accomplish was, in effect, to nullify the plain intent and purpose of the will by taking all beneficial interest in the real estate from the devisee and establishing it in themselves. In line with an unbroken series of decisions by this court it must be held that the action was in effect a "contest" of the will. If the rule long established in this state by these many decisions were to be disregarded, it might perhaps be argued that plaintiffs were not, technically, "contesting" the will, but were merely seeking to impress a trust on the realty in the hands of the devisee, which would leave her with only the bare legal title (which title plaintiffs ask to have "reconveyed" to them). Our forthright decisions, at variance with that academic view, have held that any action whose plain and essential purpose is to get rid of a will — to effect a result contrary to the obvious intent of the testator—is an action "to contest" the will and can only be brought in conformity with the statutes dealing with the contest of wills. (*Axe v. Wilson,* 150 Kan. 794, 96 P. 2d 880; *Rishel v. McPherson Co.,* 122 Kan. 741, 253 Pac. 586; rehearing, 123 Kan. 414, 255 Pac. 979, 124 Kan. 31, 257 Pac. 939; *Mayer v. Taylor,* 142 Kan. 54, 57, 45 P. 2d 858; *Kunze v. Kunze,* 145 Kan. 72, 64 P. 2d 558; *Koch v. Wolf,* 146 Kan. 247, 62 P. 2d 1088.) In *Rishel v. McPherson Co.,* supra, wherein an heir sought to recover property on the ground that a will which cut her off, if valid, was procured by fraud, it was held that "her remedy was by action to contest the will, and not to establish a constructive trust." (Syl. ¶ 4.)

Did the district court have original jurisdiction to entertain the instant action, which was, in effect, an action to contest the will? That question was squarely determined in the negative in the recent case of *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438. It was there held that under the present probate code which became effective July 1, 1939, the probate court in which a will is offered for probate

has exclusive original jurisdiction to entertain a proceeding to contest the will. The question was fully discussed in the opinion in that case and need not be discussed here. District courts now have jurisdiction in such matters only upon appeal. As was clearly pointed out, this denies no substantial right to those seeking to upset a will. It is merely a question of where they must first seek their remedy. If aggrieved by the decision of the probate court they may not only appeal to the district court, but under the provisions of the new code the district court, upon such appeal, is given "the same general jurisdiction and power as though the controversy had been commenced by action or proceeding in such court and as though such court would have had original jurisdiction of the matter," and the court "may allow or require pleadings to be filed or amended." (See G. S. 1941 Supp. 59-2408.)

It follows that the action should have been dismissed for lack of jurisdiction. It is unnecessary to discuss the other grounds set up in the demurrer.

The judgment is reversed with directions to dismiss the action.

Allen, J. (dissenting): The appellees are the children of Samuel Yeager and Sarah Yeager. Sarah died November 9, 1920. Serena Clay, a sister of Samuel Yeager, was a widow without children. After the death of Sarah, Serena Clay lived with Samuel and helped rear his children. Serena became greatly attached to the children and intended that her property should go to them. She owned 480 acres of land. Sometime prior to her death and while she was living in the home of her brother Samuel, Serena orally agreed with Samuel that she would devise to him all of her real estate upon the condition and understanding that Samuel would devise the same to his children. In reliance upon the promise so made to her, Serena Clay executed her will in which she devised the land now in question to Samuel. Serena died in July, 1926, and her will was duly admitted to probate. Thereafter Samuel Yeager married the appellant Mary Yeager. Samuel Yeager died testate on June 13, 1941. By his will he devised a portion of the real estate which he received under the will of his sister Serena to his children, appellees herein, and devised the balance to the appellant Mary Yeager.

The will of Samuel Yeager was admitted to probate in the probate court of Kingman county. The present action was brought in the district court of Kingman county to impress a trust on the real estate devised to appellant Mary Yeager.

A demurrer to the petition was overruled and defendants appeal.

(1) I am unable to agree to the proposition that the action to establish a constructive trust as set forth in the petition is in substance and effect a contest of the will as stated in the majority opinion.

The probate code does not specify or limit the grounds for a contest of a will. In Bartlett's Probate Law, section 1063, it is stated:

"Ordinarily objections to the probate of wills rest upon one or more of three grounds: (1) defective execution; (2) mental incompetency; or (3) undue influence. Objections should be in writing and filed at or before the time fixed for the hearing."

In section 1067 of the same valuable work, it is stated:

"The statute provides for establishing a will by a proceeding in rem, which concludes the world with respect to the validity of the will, unless some person claiming an interest appears and opposes or contests its probate. This statute was designed to prevent barratry and to give security to title derived by will. The purpose of opposition to probate is to prevent the establishment of its validity or to establish its invalidity. The statute does not specify or limit the grounds of the contest. No distinction is made with respect to grounds of contest, whether failure to observe essential formalities in the execution of the will, nonexecution, lack of testamentary capacity, undue influence, or fraud.

"The contest may be on the ground that the will is a forgery. The ground of the contest may be that the will has been revoked. Among other grounds for a contest are testamentary incapacity, undue influence, fraud, or any combination of these grounds. Another ground for the contest of a will is stated in the statute. If it shall appear that any will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall affirmatively appear that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

Where a will is procured by fraud, duress or undue influence, the devisee or legatee will not be permitted to take and hold the property devised or bequeathed to him. Ordinarily adequate relief can be given by the probate court by refusing to admit the will to probate. This is admitted.

But all constructive trusts do not arise through fraud, duress or undue influence, and in many cases adequate relief cannot be had in the probate court.

It is a general principle that where property has been acquired in such circumstances that the holder of the legal title may not in good

conscience retain the beneficial interest equity converts him into a trustee. (*Titus v. Titus,* 151 Kan. 824, 825, 101 P. 2d 872.) The legal title may be acquired by descent—under a will, or by a transfer *inter vivos.* If acquired under a will, adequate relief may or may not be had by refusing to admit the will to probate. The real question in the present case is whether adequate relief can be had in the probate court. We must first examine the issues raised by the pleadings.

It was alleged in the petition that Serena Clay devised the land in dispute to her brother Samuel Yeager in reliance upon his promise to devise the land to his children. Upon the demurrer we must assume the allegations to be true.

The question presented by the record may be stated in this form: A, the owner of the land, devised the land to B upon the oral promise of B to devise the land to C. In violation of the faith reposed in him, B has devised the land to a volunteer, D.

The court must determine the destination of the property. Three choices are open: (1) Permit the donee under the oral trust, B, to keep the land—in that event B's gift to D would be valid; (2) declare B trustee of a constructive trust for C, the intended beneficiary, and (3) declare B trustee of a resulting trust for the heirs or successors of the original owner, A.

Our trust statute, G. S. 1935, 67-401, provides:

"No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

In *Franklin v. Colley,* 10 Kan. 260, 264, the above-quoted statute was construed. As to trusts concerning land, it was there stated:

"Mere words can no longer, under our statutes, create a trust unless such words be in writing. But, so far as the foregoing statutes are concerned, trusts may still be created by operation of law (not a word being in writing) as freely as ever. None of the foregoing statutes are intended to operate as a limitation, restriction, or prohibition upon the creation of what are known as resulting trusts, implied trusts, or constructive trusts. Such statutes are simply intended (so far as they apply to trusts) as a limitation or restriction upon the creation of express trusts. . . ."

In this connection, Restatement, Trusts, section 406 and *Comment a* thereunder is pertinent:

"Although by statute it is provided that all declarations or creations of trusts of land shall be manifested and proved by some writing signed by the party who is by law enabled to declare such a trust, no writing is required for the creation of a resulting trust.

"*Comment: a.* It was provided by the English Statute of Frauds, 29 Charles II, chapter 3, section 7, that all declarations or creations of trusts of land shall be manifested and proved by some writing signed by the party who is by law enabled to declare such a trust (see § 40). This provision is applicable to express trusts, but not to resulting or constructive trusts. In the same statute, section 8, it is provided that where any conveyance shall be made of land by which a trust shall arise or result by the implication or construction of law, such trust shall be of the like force and effect as the same would have been if the statute had not been made. Under this statute and under similar statutes in the United States, resulting trusts as well as constructive trusts are enforceable although not evidenced by a written instrument."

Under our trust statute is B entitled to keep the land?

In 3 Bogert on Trusts, section 501, the author states:

"No court would let B keep the property, unless forced to such a result by the statute of frauds or wills acts. It is a cardinal principle of equity that it decree a constructive trust against a property holder who retains property unjustly and unconscionably against another. The only refuge of B in such a situation is to argue that the legislatures have, in substance, decreed that to insist on strict compliance with the statute of frauds and wills acts and to retain the property thereafter is not a wrong of which law or equity ought to take any cognizance."

Our statute, G. S. 1941 Supp. 59-606, provides that wills must be in writing and must be executed with certain formalities. Under the will of Serena Clay the gift of the beneficial interest in the land to the children of her brother was not to take effect until her death. Clearly it was testamentary in character and the oral express trust would seem to violate the statute of wills.

A constructive trust is imposed to prevent unjust enrichment. Equity will not reward B's breach of faith by giving him the land—he would be unjustly enriched. C cannot take because the gift to C would violate the statute of wills. It would seem, then, that the property should go by way of a resulting trust to the heirs or successors of A. (3 Bogert on Trusts, § 501; 1 Scott on Trusts, § 55.1.)

However, the law is well settled that notwithstanding the statute of frauds and the statute of wills, a constructive trust should be imposed in favor of C.

In 3 Bogert on Trusts, section 499, the author states:

"In the simplest of the cases here considered, namely, the case where A is induced to make a will in favor of B, or leave such a will in effect, by the oral promise of B to hold for C, the courts are nearly unanimous in England in decreeing that B must hold in trust for C, and the same is true as to the courts in the United States. The English cases do not lay any emphasis on

the character of the trust, whether express or constructive, but it would seem that it must be constructive. The American cases show clearly that the court regards the trust for C as constructive and as based on the ground that B's conduct in seeking to retain the property for himself, after having obtained it from A on the faith of his promise to hold it for C, is highly reprehensible and unconscionable, or, as many courts say, it is 'fraudulent.'"

In *Gemmel v. Fletcher,* 76 Kan. 577, 92 Pac. 713, it appeared that Sarah Gemmel, wife of David Gemmel, was the beneficial owner of a large tract of land. When the land was acquired the title, by mistake, was taken in the name of David. Sarah wanted the land to go to her stepson Fletcher, and as death approached she expressed her determination to execute a will in favor of Fletcher. Her husband, David, promised her that if she would not make a will, he would convey the land to Fletcher. Sarah died intestate. Her husband David inherited the land as her statutory heir, but refused to carry out the promise made. The court imposed a constructive trust on the property in favor of Fletcher. It was stated: "Courts of equity do not permit persons thus to profit by their own perfidy." (p. 587.)

In this case the husband, David, had acquired the legal title by mistake. While there was nothing wrongful in the acquisition of the title, yet at all times after the deed was made to him he was under an equitable obligation to convey the title to his wife. After the death of his wife he became a trustee for Fletcher. The constructive trust arose out of the reprehensible and inequitable conduct of the husband in failing to fulfill his promise and which resulted in his unjust enrichment. On principle the case cannot be differentiated from the case at bar. Instead of making a will, Sarah Gemmel refrained from making a will.

In *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731, the court impressed a trust on the devisees under a will. Paragraph 8 of the syllabus reads:

"A husband and wife without children made an oral agreement to make wills of all their property in each other's favor upon condition that when one of them died the surviving spouse would make a new will bequeathing the property received by such a will to the heirs of the deceased spouse. In accordance with this agreement both made such wills. The wife died first. Thereafter the husband, in violation of the agreement, made a will bequeathing all his property to his own kindred, including what he had received by his wife's will, and cutting off entirely the heirs of the wife, her parents. *Held,* that those who took title to the husband's property under the will made in breach of the agreement did so as trustees for the benefit of the wife's parents, and where the parents died during the progress of the litigation pertaining to the enforcement

of such trust, the trustees will be decreed to hold the title of the property as a constructive trust for the benefit of the heirs and legal representatives of the wife's parents."

Here A (the wife) devised land to B (the husband) in reliance on the promise of B to devise the land to the heirs of A. The husband in violation of the agreement devised the land to his own kindred. Both wills were probated. The case is on all fours with the case at bar. The court followed the Gemmel case and imposed a trust on the property in the hands of the husband's devisees.

In Restatement, Restitution, section 186, paragraph 1 reads:

"Where a testator devises or bequeaths property to a person relying upon his agreement to hold the property in trust for or to convey it to a third person, the devisee or legatee holds the property upon a constructive trust for the third person."

Notwithstanding the ruling of this court in above cited cases and the array of authorities above set forth, a departure was announced in *Mayer v. Taylor,* 142 Kan. 54, 45 P. 2d 858. That was an action for the specific performance of a contract to devise property to the plaintiff if plaintiff would live with the promissors and render them the service and duty of a son. The question presented had been before this court many times, and specific performance decreed. (*Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743; *Lehrling v. Lehrling,* 84 Kan. 766, 115 Pac. 556.) In the Mayer case these cases and many of similar type were passed *sub silentio* and new doctrine introduced in the following language: "Any cause of action which the pleader can set down on paper which, if established, would necessarily render a will nugatory, is a contest of the will and must be brought within the time allowed by the statute above quoted." As expanded by later cases the doctrine seems to be that where a will is probated and no appeal is taken, the devisees under the will take a title good against the world. Under this doctrine a testator with a naked legal title, or, indeed, with no title, may pass to his devisees a perfect title to the land devised in the will. Thus all devisees under a probated will become translated into bona fide purchasers for value.

The generating origin of this doctrine, we are told, is *Rishel v. McPherson County,* 122 Kan. 741, 253 Pac. 586. But surely that case is not authority for the all-out generalization found in *Mayer v. Taylor* and followed in our recent cases. In the Rishel case the court stated: "Plaintiff was an heir of the testator, and claimed the

property on the ground the testator lacked mental capacity to make a will, and on the ground the will was induced by fraud and undue influence practiced on the testator."

In the Rishel case there was failure of proof. The court stated that the record was barren of any proof that the testator "did not do just what he wanted to do." (See syl. ¶ 1.) This state of the record determined the case and compelled a reversal of the judgment of the trial court. It would seem, therefore, that the gratuitous remarks of the court quoted in the Mayer case, and invoked as the basis of *stare decisis,* was *obiter dictum.*

In Gray, Nature and Sources of the Law, section 555, the author states:

> "In order that an opinion may have the weight of a precedent, two things must concur: it must be, in the first place, an opinion given by a judge, and, in the second place, it must be an opinion the formation of which is necessary for the decision of a particular case; in other words, it must not be *obiter dictum.*"

As above stated in the Mayer case the action was for the specific performance of a contract to devise land—a case that would involve the statute of frauds and the doctrine of part performance. In the Rishel case the action was to impeach the judgment of the probate court admitting a will to probate after the time permitted by the statute. The real question was whether under the particular facts of that case the remedy in the probate court was adequate. If the remedy was not adequate, certainly this court is not ready to announce that a person may have a right without a remedy.

Shorty after the Rishel case, *Braden v. Neal,* 132 Kan. 387, 295 Pac. 678, was decided. The opinion was written by the distinguished jurist who wrote the opinion in the Rishel case.

In the Braden case the husband and wife were without children and the survivor would inherit the property of the decedent. Each had collateral relatives. It was agreed orally that neither would make a will during their joint lives and that the survivor would make a will disposing of the property in the manner agreed. The husband died first. In violation of the oral agreement the wife conveyed some of the property, and by her last will devised a large part of the balance to her brother. The will was duly probated. The beneficiaries under the trust or contract brought an action in the district court to impress a trust on the property in the hands of the devisees under the will and the grantee in the deed. The petition charged that the instruments were procured through fraud and undue influence.

It was contended the action was, in part, one to contest a will. The court held it was not an action to contest a will, and the dictum in the Rishel case, which was relied on in the Mayer case, was not followed.

The Braden case may be stated: A (the husband) orally agreed to die intestate in reliance upon the promise made by B (the wife) to devise the property acquired by inheritance to C (collateral heirs of A). A died intestate and B became trustee of a constructive trust for C. (3 Scott on Trusts, § 491.)

In Restatement, Restitution, section 184, *Comment b,* it is stated:

"Where a devise or bequest or a failure to devise or bequeath is procured by fraud, duress or undue influence, there are three remedies which may be available: (1) the court which has jurisdiction over the probate of wills may refuse to admit to probate a will or provision in a will otherwise valid, or may admit to probate a will which would otherwise be invalid; (2) the probate court may admit to probate a will properly executed, or refuse to admit to probate an instrument not properly executed, and a court of equity, or in some states the probate court in the exercise of equity powers, may then impose upon the person taking the property under the will or by intestacy a constructive trust in favor of the person who would have taken but for the wrongful conduct; (3) a personal action of tort or for restitution may lie against the wrongdoer."

It would be difficult to suggest a remedy in the probate court that was available to the beneficiaries under the constructive trust in the Braden case. If probate of the will of the wife was refused, the property would pass by descent to her heirs. If probate of the will was allowed, the probate court was without jurisdiction to impose a trust on the devisee under the will in favor of the plaintiffs. The plaintiffs had no claim against the estate of the testatrix; as beneficiaries under the trust they were beneficial owners of the property and were demanding restitution. It is submitted that the Braden case was correctly decided; that it either repudiated the all-inclusive statement in the Rishel case that an action to establish a constructive trust is in effect a contest of a will, or limited its operation to the facts of that case. This is shown by the case of *Burger v. Pasley,* 133 Kan. 208, 299 Pac. 608—a case of the same type as the Mayer case. The opinion was written by the same justice who wrote the opinion in the Rishel case. The fact the will was probated did not prevent the court from enforcing the contract by imposing a constructive trust. If the court in the Mayer case was in search of a basis to invoke the rule of *stare decisis* here was a case of perfect and compelling application.

*Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665 was an action based on an alleged contract to devise land. No action was taken in the probate court. The action was brought in the district court. The answer raised the question of the jurisdiction of the district court. Although the court made an elaborate examination of our cases the Rishel case was not noticed. As in the Rishel case, however, the action failed for want of proof. Although the question of jurisdiction of the district court was expressly raised it was not discussed.

*Smith v. Nyburg,* 136 Kan. 572, 16 P. 2d 493, was an action to impose a constructive trust on the devisees under the will of plaintiff's father. The action was in the district court and plaintiff alleged the breach of a contract to devise the land to her. The case contains a full discussion of the authorities, but the Rishel case was not mentioned. (See, also, *Ross v. Ross,* 139 Kan. 316, 31 P. 2d 718.)

*Nelson v. Schoonover,* 89 Kan. 388, 131 Pac. 147, on rehearing 89 Kan. 779, 132 Pac. 1183, was an action for specific performance of an agreement to devise land. The court stated: "The action was not in any proper sense one to set aside the will." In *Popp v. Wilhelm,* 150 Kan. 753, 69 P. 2d 620, an action to enforce an agreement to devise land was sustained, although it was contended the action was a collateral attack on the order of the probate court admitting the will to probate.

It seems fair to assert, then, that the only support for the doctrine in the Mayer case above quoted is a statement made *arguendo* in the Rishel case and the views expressed in the concurring opinion in *Ross v. Ross,* supra. I submit the authority is too attenuated to support the *stare decisis* rule. (21 C. J. S., Courts, §§ 186, 187.)

The notion that the action to impress the real estate devised in the will with a trust is, in effect, an action to contest the will seems to be based upon a misconception of the principles upon which courts of equity proceed. Equity does not set aside the probate of the will nor interfere with the distribution or final settlement of the estate of the testator. When equity finds property in the possession of the devisee, which in equity and good conscience belongs to another, equity puts pressure on the devisee and compels restitution.

In *Amherst College v. Ritch,* 151 N. Y. 282, 37 L. R. A. 305, 45 N. E. 876, the court said:

"The trust does not act directly upon the will by modifying the gift, for the law requires wills to be wholly in writing, but it acts upon the gift itself as it reaches the possession of the legatee, or as soon as he is entitled to re-

ceive it. The theory is that the will has full effect, by passing an absolute legacy to the legatee, and that then equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator, and compels the legatee, as a trustee *ex maleficio,* to turn over the gift to them. The law, not the will, fastens the trust upon the fund, by requiring the legatee to act in accordance with the instructions of the testator and his own promise. Neither the statute of frauds nor the statute of wills applies, because the will takes effect as written and proved; but, to promote justice and prevent wrong, the courts compel the legatee to dispose of his gift in accordance with equity and good conscience." (p. 324.)

In *Church v. Ruland,* 64 Pa. 432, in an action to impress a trust on property received under a will, Sharswood, J., speaking for the court, said:

"It is not affected by the statutory provisions on the subject of wills. The proof offered is not of any alteration, revocation or cancellation, which must be evidenced in a particular manner. It gives full effect to the will and every word of it, and to the conclusiveness of the probate, where it is conclusive. It fastens upon the conscience of the party, having thus procured a will, and then fraudulently refusing or neglecting to fulfill the promise on the faith of which it was executed, a trust or confidence, which a court of equity will enforce by compelling a conveyance when the proper time for it has arrived; and with us in Pennsylvania such a conveyance will be considered as having actually been made, whenever it ought to have been made. The cestui que trust will be entitled to recover in ejectment against the trustee, and all in privity with him. This was decided in *Hoge v. Hoge,* 1 Watts 163, a case fully and ably argued and considered, both by the counsel engaged in the cause and by the court, as appears in the elaborate opinion by Chief Justice Gibson. It was there held that if a testator be induced to make a devise, by the promise of the devisee that it should be applied to the benefit of another, a trust is thereby created which may be established by parol evidence; and, that this is not contrary to the statute of wills. 'It is contended,' said Gibson, C. J., 'that parol evidence of a trust is contrary to our Statute of Wills, which corresponds as far as regards the point in dispute, with the British statute of frauds. Undoubtedly every part of a will must be in writing; and a naked parol declaration of trust in respect of land devised, is void. The trust insisted on here, however, owes its validity, not the will or the declaration of the testator, but to the fraud of the devisee. It belongs to a class in which the trust arises *ex maleficio,* and in which equity turns the fraudulent procurer of the legal title into a trustee to get at him; and there is nothing in reason or authority to forbid the raising of such a trust, from the surreptitious procurement of a devise.' To the same effect is *Jones v. McKee,* 3 Barr 496, S. C. 6 Barr 425, a case the same in principle and very similar in its facts to that presented upon this record." (p. 442.)

The rule announced that an action to fasten a trust on the devisees or legatees under a will is, in effect, a contest of a will seems to be an expression of dubious content.

Does the rule mean that in all such cases the beneficiaries under a constructive trust have an adequate remedy in the probate court? If so, I submit the pronouncement is unsound.

In *Brazil v. Silva,* 181 Cal. 490, 185 Pac. 174, it appeared Silva executed a will in favor of defendant. The will was contested but was admitted to probate, and a decree of distribution was made in favor of defendant. Thereafter the heirs of Silva brought an action charging that Silva had delivered the will to defendant and later demanded it be delivered back so that he could destroy it; that defendant in the presence of Silva pretended to burn the will, but in fact burned another paper and that Silva died in the belief the will had been destroyed. In holding that the demurrer to the petition should be overruled, the court stated:

"In support of their contention that the complaint does not state a cause of action counsel for the defendant advance two propositions. The first is that the matter is determined by the order admitting the will to probate. The soundness of this position depends upon whether or not the issues presented by the present complaint are questions going to the final question before the probate court, that is, the question as to the instrument being the legal and valid will of the decedent unrevoked at the time of his death. If the issues presented by the complaint are not of this character, it is plain that they could not be passed on the probate proceedings. . . ." (p. 493.)

In *Seeds v. Seeds,* 116 Ohio St. 144, 156 N. E. 193, 52 A. L. R. 761, the action was to impose a constructive trust on property acquired under a forged will which had been duly probated upon perjured testimony. It was contended the action was in effect a contest of a will. The court stated:

"If this petition were, as claimed by defendants, an action to contest a will, it is quite clear that it could not be maintained, because wills and contests of wills are purely statutory, and the Legislature, which gave the right to make a will and has also given the right to contest it, has fixed a definite limitation within which such a suit must be brought. This suit, not having been brought within the time limited, could not be maintained as a will contest. It does not follow that, because the effect of this suit, if successful, would result in a different course of devolution of the property, it must be regarded as a will contest. It has already been seen that judgments of courts induced by fraud and circumvention may be set aside, and there can be no reason why proceedings in the probate court relating to wills should have a greater degree of sanctity or finality than other proceedings in other courts." (p. 157.)

The court commented on the case of *Broderick's Will,* 21 Wall. 503, 22 L. Ed. 599, relied on in the Mayer case, as follows:

"In that case the court refused to set aside the will because of the peculiar facts alleged and proved, but declared, *semble,* that, 'where the courts of

probate have not jurisdiction, or where the period for its further exercise has expired and no laches are attributable to the injured party, courts of equity will, without disturbing the operation of the will, interpose to give relief to parties injured by a fraudulent or forged will against those who are in possession of the decedent's estate or its proceeds, *mala fide,* or without consideration.'

"In that case the court refused to give relief, because it appeared that the delay in bringing the suit was not due to ignorance of the fraud, or any attempt to conceal it, but to ignorance of the decedent's death and all of the open and public facts of the case. The bill of the complainants showed that the fraud was a matter of public notoriety for more than eight years before the bill was filed." (p. 158.)

See 3 Bogert on Trusts, sec. 477; 26 R. C. L. 1241; Annotation 52 A. L. R. 779.

The doctrine announced in the majority opinion pushed to its logical conclusion, and applied as an unbending rule would not only abrogate the bona fide purchaser rule, but would nullify our statute which embodies the bona fide purchaser principle. It is merely another way of asserting that the devisees of Samuel Yeager get a better title than the testator had when the will became effective. It is an assertion that a trustee of a constructive trust may by his will transfer the subject matter of the trust to third persons who do not pay value and thus cut off the equities of the beneficiaries of the trust.

What is the bona fide purchaser rule? A bona fide purchaser is defined in Restatement, Trusts, section 284, as follows:

"(1) If the trustee in breach of trust transfers trust property to, or creates a legal interest in the subject matter of the trust in, a person who takes for value and without notice of the breach of trust, and who is not knowingly taking part in an illegal transaction, the latter holds the interest so transferred or created free of the trust, and is under no liability to the beneficiary.

"(2) In the Restatement of this Subject such a transferee is called a 'bona fide purchaser.'"

A legatee or devisee under a will is a mere donee and the bona fide purchaser rule applicable to donees is defined in Restatement, Trusts, section 289, and *Comment* thereunder as follows:

"If the trustee in breach of trust transfers trust property and no value is given for the transfer, the transferee does not hold the property free of the trust, although he had no notice of the trust.

"*Comment: a.* The interest of the beneficiary in the trust property is not cut off by a transfer by the trustee in breach of trust to a third person if no value is given for the transfer, although the transferee had no notice that the transfer was in breach of trust; and the beneficiary can in equity compel the

third person to restore the property to the trust. If the third person has not disposed of the property or otherwise changed his position when he receives notice that the transfer was in breach of trust (see § 292), he holds the property upon a constructive trust for the beneficiary of the trust.

"*b. Transfers inter vivos or by will.* The rule stated in this section is applicable where the trustee makes a gift of trust property inter vivos or by will."

The bona fide purchaser rule applies to express, constructive and resulting trusts. (Bogert on Trusts, § 881.) And in section 887 the author states:

"It is well settled, that, in order to get the benefit of the bona fide purchaser rule, the taker of the legal title must have 'paid value,' or have been a taker 'for a valuable consideration.' Thus, takers for 'good' consideration, that is, love and affection, are excluded, as are donees by an inter vivos transaction or by will. . . ."

Moreover, the bona fide purchaser doctrine established by equity has been embodied in our statutes. G. S. 1935, 67-402, reads:

"No such trust, whether implied or created, shall defeat the title of the purchaser for a valuable consideration and without notice of the trust."

The statute was formulated in the light of the principles of equity. The clause "No such trust, whether implied or created" refers (1) to resulting and constructive trusts which arise by implication of law and are therefore classified as "implied" trusts, and (2) also to express trusts which are "created" by the acts of the parties. In plain words, it states that if a trustee "in any such trust" transfers the property (of course, in breach of the trust) and if the transferee pays a valuable consideration and has no notice that the transferor held the property in trust for certain beneficiaries—then and then only are the rights of the beneficiaries cut off. But if the transferee is a mere donee, then the transferee's title is defeated and the beneficiaries of the trust, who are in equity the owners of the property, are entitled to the property. The devisees under the will of Samuel Yeager were mere donees—they paid no "valuable consideration" and are not bona fide purchasers. If, therefore, the trust is established by the clear and satisfactory testimony necessary in such cases—then under the statute the claims of the devisees are junior and inferior to the just rights of the plaintiffs. This statute was passed in 1868, and while it has enjoyed a quiet slumber for more than seventy years, it has not lost its virility, unless nullified by our recent decisions.

In Restatement, Restitution, section 160, *Comment g,* it is stated:

"Where property is held by one person upon a constructive trust for another,

and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off (see § 168). In such a case he can maintain a suit in equity to recover the property from the third person, at least if his remedies at law are not adequate. . . ."

What remedy did the plaintiffs have in the probate court? Serena Clay was induced to devise her land to her brother upon his promise to devise the land to the plaintiffs. Could he violate the agreement and keep the land? Long ago this court said that courts of equity do not permit persons thus to profit by their own perfidy. Could Yeager transfer this property to a donee and thereby invest the donee with a perfect title cutting off the equities of the plaintiffs? Not under the bona fide purchaser rule and our statute which embodies the spirit of that rule.

In this case, as in *Meador v. Manlove*, supra, we have two separate wills to consider. Serena Clay died in 1926 and her will was then probated. The petition does not allege that she was induced to execute the will by fraud, duress or undue influence. Her brother Samuel may or may not have intended at the time of their agreement to keep faith with his sister. On the question as to whether his conduct in violating the agreement would raise a constructive trust his intention at the time is immaterial. (1 Scott on Trusts, § 55.1.) His failure to perform his promise would raise a constructive trust. It is not contended there was any ground upon which the will of Serena Clay could be contested or the probate of her will be opposed. During the life of Samuel certainly the will of Serena could not be questioned. On what ground could the probate of the will of Samuel be opposed? There was no allegation that his will was procured by fraud or undue influence. The majority opinion states the action was in effect a contest of the will, but fails to inform us whether the reference is to the will of Serena Clay or her brother. There was no ground to oppose the probate of either will.

It is suggested that the plaintiffs could protect their rights by filing a claim or demand in the probate court. But the plaintiffs as beneficiaries under the trust are the equitable owners of the property. They are asking that the court compel restitution of their own property. They do not have and do not pretend to have any claim or demand, as those terms are used in the probate code, against the estate of Samuel Yeager. They are asking that their own property be turned over to them, not that a claim for money be allowed.

(2) Did the district court have jurisdiction?

Our statute, G. S. 1941 Supp. 59-301, provides:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction:

"(8) Of trusts and powers created by wills admitted to probate, and of trusts and powers created by written instruments other than by wills in favor of persons subject to guardianship; to appoint and remove trustees for such trusts, to make all necessary orders relating to such trust estates, to direct and control the official acts of such trustees, and to settle their accounts; but this provision shall not affect the jurisdiction of district courts in such cases.

"(12) And they shall have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts."

If the probate court had jurisdiction it was by virtue of this statute. That the probate court did not acquire jurisdiction appears from the following considerations:

1. From the explicit language of the statute. It specifies that the probate court shall have jurisdiction "of trusts and powers created by wills admitted to probate."

As above stated, trusts are either express or implied. Implied trusts include resulting trusts and constructive trusts.

An express trust is created only if the settler properly manifests an intention to create a trust. It may be created by spoken words or by written words. Under our statute of frauds, if the trust affects land it must be created by written words. It may be and frequently is created by a will—if so, the requirements of the statute of wills must be met.

Implied trusts, that is, constructive and resulting trusts, are created by equity. A resulting trust arises where circumstances raise an inference that the settler does not intend that the person taking or holding title shall have the beneficial interest. On the other hand, a constructive trust is imposed, not to effectuate intention, but to redress wrong or unjust enrichment. A constructive trust is never created by a will—it is created by equity.

The line of demarcation between trusts "created" and trusts "implied" is recognized by our statutes.

G. S. 1935, 67-401, reads:

"No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

G. S. 1935, 67-402, reads:

"No such trust, whether implied or created, shall defeat the title of the purchaser for a valuable consideration and without notice of the trust."

G. S. 1935, 67-210, reads:

"Declarations or creations of trusts or powers, in relation of real estate, must be executed in the same manner as deeds of conveyance; but this provision does not apply to trusts resulting from the operation or construction of law."

As subsection eight only purports to give probate courts jurisdiction of trusts "created by wills"—that is, express trusts—then by the explicit words of the statute it had no jurisdiction over the constructive trust alleged in the petition. Consequently, to hold the district court had no jurisdiction is to ignore or strike down the plain language of the statute.

Moreover, the last clause of subsection eight—if plain language means anything—specifies that the district courts shall have concurrent jurisdiction even in cases of trusts "created by wills." In other words, the statute leaves the *exclusive* jurisdiction as to implied trusts (constructive and resulting trusts) in the district court, and by the last clause of subsection eight specifies that the probate court shall have concurrent jurisdiction as to trusts "created by wills," that is, express trusts. Thus, district courts have exclusive jurisdiction of constructive and resulting trusts and concurrent jurisdiction with the probate court as to testamentary trusts.

It should also be observed that the statute gives the probate court jurisdiction of "powers" created by probated wills. A testamentary power is a power exercisable only by a will. The term is devoid of meaning when applied to constructive trust.

2. Our statute G. S. 1935, 20-301, declares that district courts "shall have general original jurisdiction of all matters, both civil and criminal." This statute was construed in the early case of *Shoemaker v. Brown,* 10 Kan. 383. Mr. Justice Valentine (whose opinions are always consulted by the writer with renewed respect), in speaking for the court, defined the meaning of "general original jurisdiction" as used in that statute. Surely the jurisdiction thus conferred on the district courts is not to be taken away by implication. The only express statute is subsection eight and that statute only confers concurrent jurisdiction as to testamentary trusts and certain nontestamentary express trusts.

The probate court could not declare and enforce constructive trusts unless general equitable jurisdiction was conferred on the probate court. This was not done—on the contrary, the last clause of subsection eight and subsection twelve of G. S. 1941 Supp. 59-301, expressly limits the jurisdiction of the probate courts.

3. Attention is called to article 16 of the probate code, sections 59-1601 to 59-1611, pertaining to the accounting of trustees. These sections require trustees to file accounts at stated periods. Obviously these provisions apply only to express trusts. A trustee of a constructive trust may be required to account for benefits received for property wrongfully held, but from the date of the Statute of Uses until this moment no one has ever heard of a requirement that a trustee of a constructive trust should file a statement of his accounts at stated times. In other words, a constructive trust is not a true trust but a remedy invented by equity to accomplish justice. When the court declares a constructive trust it directs the transfer of property to the rightful owners. As soon as declared, the trust ends. In that sense its birth and death are simultaneous events.

A study of the entire probate code reveals that so far as trusts are concerned it was carefully formulated to deal with express trusts. It does not apply to constructive trusts.

4. The present case follows *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438. The action in that case was for the specific performance of an oral contract where the decedent had, as was alleged, agreed to leave real and personal property to the plaintiff in consideration of services rendered. At the time, G. S. 1941 Supp., section 59-2310, provided:

> "Upon the filing of a petition by any person claiming to be entitled to a conveyance from a decedent or ward bound by written instrument to make a conveyance or lease, or by the representative, setting forth a description of the real estate and the facts upon which such claim for conveyance or lease is based, the court shall fix the time and place for the hearing thereof, notice of which shall be given to such persons and in such manner as the court shall direct. Upon proof of the petition, the court may order the representative to execute and deliver a deed of conveyance or lease upon performance of the contract."

By settled rules of statutory construction this express grant of equitable jurisdiction to enforce specific performance as to written instruments for the conveyance of land would exclude jurisdiction as to an oral agreement upon part performance. The enumeration of certain powers in a statute is an exclusion of all powers not mentioned, under the rule of construction—*expressio unius est exclusio alterius.* (*Tresnor v. Rees,* 154 Kan. 581, 119 P. 2d 511.) Thus the statute above quoted has been amended by that decision and expanded to cover oral agreements, although the statute was not considered in the opinion in that case.

5. The general rule is that the beneficiary of a constructive trust

will be barred by laches if he knows or ought to know of the circumstances and fails to sue within a reasonable time. Ordinarily he will be barred after lapse of the period fixed by the statute of limitations in analogous cases. (3 Scott on Trusts, § 481.1.) In cases of fraud our statute G. S. 1935, 60-306, *third,* provides that a cause of action shall not accrue until the discovery of the fraud. The rules heretofore applied are now abrogated and the short period fixed by the probate code for a separate and distinct purpose is adopted.

In the present case the court holds the district court has no jurisdiction. I have shown that the probate code has not conferred jurisdiction on the probate court. The result is the plaintiffs are denied a remedy. This is not the common-law method. If a person has a right he must of necessity have a means to vindicate and maintain it; it is a vain thing to imagine a right without a remedy, for want of right and want of remedy are reciprocal. (*Ashby v. White,* [1703] 2 Ld. Raym. 938.)

Our district courts have always been courts of general equitable jusisdiction. These courts are presided over by men learned in the law. If the legislature intended to strip these courts of general equitable jurisdiction they failed to incorporate their views in the code.

Under our statute G. S. 1941 Supp. 59-201, a judge of the probate court is not required to be a member of the bar. Surely we are not to return to the system of laymen's equity that prevailed in the Colonies. In a paper by Professor Walsh on "The Growing Function of Equity in the Development of the Law," reprinted in Walsh, Cases on Equity, page 34, from which I quote, the author states:

"It seems clear, therefore, that no real start was made during the colonial period in the development of courts of equity or of equitable jurisdiction. Such as it was, whether administered by the governor and his council or by the courts, it was layman's equity applied by men without professional training as lawyers. In the northern colonies it was intensely unpopular as it was regarded as the usurpation of popular rights and liberties by the governors as tools of the king. Though this attitude was absent in the southern colonies, the informal layman character of law and equity administered there, especially in the Carolinas and Georgia, prevented any real establishment of the English Chancery system.

. . . . . . . . . . . . . . . . . . . .

"No extensive progress was made in the growth of equity in the original states after the Revolution down to 1810. It was a period in which the new jurisdiction was being established. The development in Massachusetts and Pennsylvania make clear how slow this development was. Ignorance of the

English equity system was the rule, and the process of education in this field is still very far from satisfactory among lawyers generally, and ignorance of the true nature of equity in its relation to the law is still altogether too prevalent even among judges and professors of law. No considerable development from the layman's equity of the time of the revolution could be expected until great leaders should appear to educate the bar and direct the way of progress. Kent and Story began their great work in this development about 1810. . . ."

Students of atavistic trends in the law may have occasion to examine the legalistic concepts set forth in some of the recent decisions of this court.